# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BRENDAN NASBY,<br><br>                           Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, *et al.*,<br><br>                           Defendants. | 3:17-cv-00447-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]** |

This case involves a civil rights action filed by Plaintiff Brendan Nasby, ("Nasby"), against Defendants Renee Baker ("Baker"), Debra Brooks ("Brooks"), Harold Byrne ("H. Byrne"), Quentin Byrne ("Q. Byrne"), Tara Carpenter ("Carpenter"), James Cox ("Cox"), Adam Endel ("Endel"), Robert LeGrand ("LeGrand"), E.K. McDaniel ("McDaniel"), and William Sandie ("Sandie") (collectively referred to as "Defendants"). Currently pending before the court are Nasby's (ECF No. 85) and Defendants' (ECF No. 95) competing motions for summary judgment, Nasby's (ECF No. 104) and Defendants' (ECF No. 98) oppositions to those motions, and Nasby's (ECF No. 103) and Defendants' (ECF No. 105) replies. Having thoroughly reviewed the record and papers, the court recommends Defendants' motion for summary judgment (ECF No. 95) be granted and Nasby's motion for summary judgment (ECF No. 85) be denied.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Nasby is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC"), housed at the Lovelock Correctional Center ("LCC"). (ECF No. 49 at 1). The events in question allegedly occurred at LCC and the Ely State Prison ("ESP") between December 2008 and August 2015. (*Id.*) Pursuant to 28 U.S.C. § 1915A(a), the court screened Nasby's first amended complaint ("FAC") on July 19, 2018

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

and issued a screening order. (ECF No. 5). The Court allowed Nasby to proceed on portions of Counts I, II, and III, denial of meaningful access to the courts under the First and Fourteenth Amendments against Defendants Baker, Brooks, Q. Byrne, Carpenter, Cox, Endel, McDaniel, Sandie, and Howard Skolnik. (*Id.* at 8).[2]

On August 12, 2019, proceeding *pro se*, Nasby submitted his second amended complaint ("SAC"), which he signed and verified, under penalty of perjury, acknowledging the facts and information contained in the complaint were "true and correct." (ECF No. 49 at 22). In his SAC, which was not screened, Nasby added Defendants LeGrand and H. Byrne. (ECF No. 49 at 2). However, the claims as alleged in the FAC were unchanged.

### A. Nasby's Claims[3]

Nasby alleges Defendants prevented his meaningful access to the courts while he was housed at ESP from 2006 to 2014, and at LCC in 2014 and 2015. (ECF No. 49 at 6, 8). Specifically, Nasby alleges that *Nika v. State* (124 Nev. 1272 (2008)) ("*Nika*"), a Nevada Supreme Court decision, could have benefitted him in his second post-conviction petition circa February 2011 but instead his petition was denied. (*Id.* at 8-9). Nasby further alleges, while at LCC circa December 2014, his third post-conviction petition was again denied due to his failure to apprise himself of the *Nika* decision. (*Id.* at 9). Nasby states that inmate "Kevin Sutton" informed him of the existence of *Nika* in August of 2015. (*Id.*) Nasby further alleges that his fourth post-conviction petition, in which he discussed *Nika*, would have entitled him to relief, but that petition was denied due to unreasonable delay. (*Id.* at 9-10). Nasby alleges his nearly eight-year delay in locating the *Nika* case was the fault of NDOC officials at ESP and LCC denying his meaningful access to the

---

[2] The Court dismissed former Defendant State of Nevada ex rel. NDOC with prejudice because amendment would be futile. (ECF No. 5 at 7). The Court further dismissed former Defendants Michael Fletcher, Howard Skolnik, and Adam Watson pursuant to Fed. R. Civ. P. 4(m), on Defendants' motion. (*See* ECF No. 107).

[3] The facts as stated herein are taken from the allegations asserted in the Complaint unless noted otherwise.

2

courts. (*Id.* at 10-11). Nasby alleges that had he known about *Nika*, he would have filed a timely and successful post-conviction petition. (*Id.* at 11).

Count I alleged violations of the First Amendment right to free speech, to petition for redress of grievances, and to meaningful access to the courts, as incorporated through the Fourteenth Amendment. (*Id.* at 12). Nasby alleges he was held in "'lock-down' units" between the years of 2006 to 2014 while at ESP. (*Id.*) Nasby claims that lock-down inmates were prevented physical access to the law library and instead required inmates to fill out material request forms with unreasonable specificity. (*Id.*) Nasby further claims that law clerks and legal assistants were not allowed into the lock-down units. (*Id.*) Nasby alleges ESP's practice of preventing lock-down inmates from comparing legal theories, or discussing cases, combined with its paging request system, prevented Nasby from discovering *Nika*. (*Id.* at 12-13). Nasby further alleges LCC's law library access policies are similarly wanting. (*Id.* at 13-14). Nasby alleges both prisons failed to provide adequately trained staff or law clerks. (*Id.* at 13-15). Nasby claims that by preventing his physical access to the prison law library, officials at ESP and LCC prevented him from presenting his *Nika* and *Byford v. State* (116 Nev. 215 (2000)) ("*Byford*") claims to the court. (*Id.* at 14-15). Nasby's Count I allegations are against Defendants Baker, Brooks, H. Byrnes, Q. Byrnes, Carpenter, Cox, Endel, LeGrand, McDaniel, and Sandie. (*Id.* at 14).

In his Count II, incorporating the facts from Count I against all defendants, Nasby alleges violations of procedural due process under the Fourteenth Amendment. (*Id.* at 16). In his Count III, incorporating the facts from Count I against all defendants, Nasby alleges violations of substantive due process under the Fourteenth Amendment. (*Id.* at 17). Nasby requests the following relief: (1) "An injunction, ordering the Defendants to supplement its paging system with the appointment of counsel, or someone similarly trained in the law, for all inmates not allowed physical access to the prison's law library, or allow inmates physical access to the prison's law library"; (2) "A Declaratory Judgment declaring that . . . [Nasby] was denied meaningful access to the court, between the years

3

of 2008-2015"; (3) "Seven (7) million dollars, in compensatory damages" for preventing Nasby from pursuing his *Nika* and *Byford* claims; (4) "Nine (9) million dollars, in compensatory damages" for lost wrongful imprisonment and conviction suits; (5) "An injunction, ordering the continued payment of one (1) million dollars, in compensatory damages" for every year Nasby serves in prison past January 5, 2016; (6) "Compensatory damages for all expense, and cost, (sic) of litigating this case – including possible attorney fees"; and (7) "One-Hundred-Thousand dollars, in punitive damages, for the knowing and intentional violation of my civil and constitutional rights." (*Id.* at 22-23).

### B. Competing Motions for Summary Judgment

On March 17, 2020, Nasby filed a motion for summary judgment (ECF No. 85). Nasby argues defendants law library policy prevented his adequate access to legal resources. (*Id.* at 13-17). Nasby further argues NDOC's Operational Procedures ("OP") related to law library access for locked-down inmates are overly restrictive and thus not narrowly tailored. (*Id.* at 17-20). Defendants responded (ECF No. 98) and Nasby replied (ECF No. 103).

On May 8, 2020, Defendants also filed a motion for summary judgment. (ECF No. 95). Defendants argue that Nasby received adequate access to legal resources. (*Id.* at 9-12). Defendants further argue Nasby's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.* at 12-14). Moreover, Defendants argue that the LCC defendants could not have injured Nasby and that all Defendants lack personal participation. (*Id.* at 15-18). Alternatively, Defendants argue they are entitled to qualified immunity. (*Id.* at 18-21). Nasby responded (ECF No. 104) and Defendants replied (ECF No. 105). The recommended disposition follows.

## II. LEGAL STANDARD

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material." *Id.* A dispute is "genuine" only where a

1 reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the

litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III.   DISCUSSION

### A.   Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B.   Count I – Meaningful Access to the Courts

A prisoner "retains those First Amendment Rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances." *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011). States must "'assure the indigent defendant an adequate opportunity to present his claims fairly.'" *Bounds v. Smith*, 430 U.S. 817, 823 (1977) (quoting *Ross v. Moffitt*, 417 U.S. 600, 616 (1974)). "'[M]eaningful access to the courts is the touchstone." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds*, 430 U.S. at 823). Meaningful access ensures that inmates "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of

6

confinement." *Id.* at 356. *Lewis* extended the First Amendment right of meaningful access to the courts to claims under 42 U.S.C. § 1983. *Id.* at 354-55.

The Ninth Circuit Court of Appeals has identified two potential actions for failure of prison officials to provide meaningful access to the courts under the First Amendment: (1) "the denial of adequate law libraries and other legal assistance to prisoners, which prevents them from challenging their sentences and conditions of confinement"; and (2) "active interference with a prisoner's right to litigate, such as seizing and withholding the prisoner's legal files." *First Amendment Coalition of Ariz., Inc. v. Ryan*, 938 F.3d 1069, 1080 (9th Cir. 2019) (citing *Hebbe v. Pliler*, 627 F.3d 338, 342-43 (9th Cir. 2010) and *Silva*, 658 F.3d at 1102-04, respectively). However, "the First Amendment right of access to the courts does not include the right of prisoners to discover grievances [or] litigate effectively once in court." *Id.* at 1080-81 (quoting *Lewis*, 518 U.S. at 354) (internal quotations omitted).

Thus, although prison officials are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law . . . in order to attack their sentences [or] conditions of confinement", that requirement ends at "the pleading stage." *Id.* at 1102 (internal citations omitted). Moreover, although the requirement to avoid active interference extends beyond the pleading stage throughout the litigation, that requirement merely forbids the erection of barriers to inmate litigation but requires no affirmative assistance from prison officials. *Id.* at 1102-03; *see Lewis*, 518 U.S. at 354. As a threshold matter, actual injury is a prerequisite for standing to bring a denial of meaningful access claim. *Lewis*, 518 U.S. at 351-53, n.4; *see Alvarez v. Hill*, 518 F.3d 1152, 1155, n.1 (prisoner must show injury, such as the frustration of a nonfrivolous legal claim to bring a *Bounds* claim) (internal citations omitted).

Based on the evidence before the court, Defendants have, with authenticated evidence have met their initial burden on summary judgment. Accordingly, the burden shifts to Nasby to "designate specific facts demonstrating the existence of genuine issues

for trial." *In re Oracle Corp.*, 627 F.3d at 387. Nasby cannot meet his burden.

Although Nasby attached grievances, discovery responses, affidavits, kites, request forms, and court documents to his SAC (ECF No. 49), his motion for summary judgment (ECF No. 85), his reply (ECF No. 103) and his opposition (ECF No. 104), he has failed to produce any evidence Defendants prevented his meaningful access to the courts. Moreover, Nasby's claims are barred by *Heck* and further fail to meet the threshold inquiry for establishing a cause of action for denial of meaningful access to the courts. *See* 51 U.S. at 487; *see also Alvarez*, 518 F.3d at 1155. Therefore, even when viewing all facts and drawing all inferences in the light most favorable to Nasby, the court finds summary judgment should be granted in favor of all Defendants with respect to all of Nasby's claims.

### 1. *Heck* Bar

Defendants assert Nasby's claims are barred by *Heck* because "a judgment in favor of [Nasby] would necessarily imply the invalidity of his conviction or sentence." *Id.*; (*see* ECF Nos. 95 at 12-14 and 98 at 2). Nasby argues that his claims merely attack the constitutionality of NDOC's paging-only procedures and not the validity of his sentence. (ECF No. 103 at 2-3). Nasby incorrectly argues his claims are not barred by *Heck*. *See* 51 U.S. at 487. Although Nasby's claims purport to attack the validity of NDOC's OPs, not his sentence, claims for "monetary damages challenging conviction" are not "cognizable under § 1983 at all" where the demand for relief is predicated on the invalidation of an underlying conviction. *Id.* at 483. There, as here, a prisoner "has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489. Because Nasby demanded well over twenty (20) million dollars and declaratory and injunctive relief related to wrongful conviction and imprisonment, time served since 2016, and the failure of NDOC officials to facilitate his post-conviction petition victory by furnishing him with *Nika*, he accordingly challenges his underlying conviction. *Id.*; (*see* ECF No. 49 at 22-23). Thus, Nasby's claims are barred by *Heck* and Defendants are

entitled to summary judgment in their favor on Nasby's Count I, First Amendment claim. *See id.*

### 2. Actual Injury

Even if Nasby's claims are not barred by *Heck*, Nasby fails to meet the actual injury threshold for establishing a meaningful access to the courts claim. *See Alvarez,* 518 F.3d at 1155 (prisoner must show injury, such as the frustration of a nonfrivolous legal claim). Nasby's premise that he would have succeeded in his post-conviction relief petitions had NDOC provided him with *Nika* is merely speculative and unsupported by the evidence. *See Soremekun,* 509 F.3d at 984 (conclusory statements, speculative opinions, and assertions uncorroborated by facts are insufficient to create a genuine dispute). Further, the evidence shows that both state and federal courts have rejected Nasby's law library access arguments. (*See* ECF No. 85 at 85-87, 96-100, and 107-109). Nasby has provided no evidence outside of his conclusory assertions that *Nika* would have garnered him a better result in his post-conviction petitions than he in fact obtained and thus cannot demonstrate injury. *See Lewis*, 518 U.S. at 353. Actual injury is a requirement for standing to bring a meaningful access claim. *See Phillips v. Hust*, 477 F.3d 1070, 1075-76 (9th Cir. 2007) ("To have standing to assert a claim of denial of access to the courts, an inmate must show actual injury.") (internal quotations omitted). Accordingly, Nasby fails to meet the threshold requirement for bringing a cause of action for denial of meaningful access to the courts. *See Lewis*, 518 U.S. at 351-53; *see also Alvarez,* 518 F.3d at 1155. Consequently, Defendants are entitled to summary judgment in their favor on Nasby's Count I, meaningful access to the courts claim.

### 3. Meaningful Access

Nasby asserts Defendants prevented his meaningful access to the courts by using a constitutionally inadequate paging-only system for lock-down inmates' legal research. (ECF Nos. 85 at 14-15 and 103 at 9). In support of his allegations, Nasby attached several affidavits from inmate law clerks stating that the only recourse non-Unit 8 inmates had to request legal materials was the paging system. (*See* ECF No. 85 at 144-157).

However, the affidavits provided by Nasby are contradicted by Nasby's other evidence. For example, the affidavits state, "in order for an inmate . . . to receive . . . case law, statutes, or the like, he must use the paging system by requesting that exact resource . . . " (ECF No. 85 at 144, 147, 150, 153) and "if a prisoner does not know or fails to request his 'specific case law and/or materials' he simply will not receive them." (*Id.* at 157). Nevertheless, Nasby provided a legal materials request form (DOC 1716), which clearly provides space for inmates to request a "Topical Search" rather than the "Name of Specific Case or Reference Material" or "Citation." (*Id.* at 138, 159). Nasby himself writes "my unit assistant . . . explained . . . that I should request a 'topical search' using a legal kite." (*Id.* at 44). Moreover, Nasby attached a supply and book request form (DOC 3040), plainly stating that inmates may request case law. (*Id.* at 140). Indeed, Defendants' evidence shows that NDOC inmates, including Nasby, could request both general and specific information from the law library on either DOC 1716 or DOC 3040. (*See* ECF Nos. 95-6, 95-7, and 95-8).

Nasby incorrectly relies on *Toussaint v. McCarthy* for the proposition that NDOC's paging system is automatically unconstitutional. 801 F.2d 1080, 1109-10 (9th Cir. 1986); (*see* ECF No. 85 at 14-15). Instead, the Court in *Toussaint* found that where administratively segregated prisoners are denied reasonable access to a physical law library, those prisoners must be afforded legal assistance. *See id.* In fact, the Court in *Toussaint* cited several cases in which prisons operated constitutionally adequate facilities by providing legal assistance without providing access to legal materials at all. *Id.* The prison is required only to provide "adequate alternatives." *Id.*

Here, the evidence shows NDOC provides level one prisoners with physical access to the law library (*see* OP 736.14 at ECF 85 at 164), and provides level two and three prisoners (*see* OP 737.14 and 738.13, at ECF No. 85-1 at 5 and 21, respectively) assistance from institutional law library staff who coordinate legal assistance with inmate law clerks. Further, Nasby produced OP 722, a 16-page document outlining the multitude of procedural steps required by NDOC to ensure inmates receive law library access or

adequate alternatives.  (*See* ECF No. 85-1 at 125).  Nasby has provided no evidence NDOC's system is comparable to the system the court found inadequate in *Toussaint*. *See* 801 F.2d at 1109-10.  Nasby has also submitted no evidence Defendants failed to provide adequate alternatives to physical visits to the law library for administratively segregated prisoners.  *Id.*

In contrast, Defendants' evidence shows NDOC offers Shepardizing services to NDOC inmates.  (*See* ECF No. 95-9).  For example, had Nasby simply requested that NDOC Shepardize *Byford* (a case on which Nasby heavily relied in his post-conviction petitions – *see* ECF Nos. 49 at 7-11 and 85 at 53-87), the *Nika* case would have been listed under certiorari denials.  (*See* ECF No. 95-9 at 2-3).  Nasby has provided no evidence such services were unavailable to him.  However, Nasby's evidence does show he requested legal materials from the wrong office on the wrong form (ECF No. 85 at 41), failed to follow proper procedures when requesting legal materials (*Id.* at 43), did not provide researchers with enough information to locate the legal materials he sought (*Id.* at 44-47), and asked for legal advice that could not be given.  (*Id.* at 49).

Nasby's denial of meaningful access to the court claim essentially blames Defendants for his research and litigation failures.  However, the First Amendment right of access to the courts does not include the right of prisoners to . . . litigate effectively once in court."  *Ryan*, 938 F.3d at 1080-81.  Therefore, Nasby's failure to obtain relief in his post-conviction petitions and his failure to locate *Nika* prior to 2015 are not evidence Defendants provided Nasby with inadequate law library access.  Indeed, Nasby's multiple post-conviction petitions in state and federal court further militate against his allegations Defendants provided constitutionally inadequate access to the courts.  (*See* ECF No. 85 at 53-87).  Nasby has provided no evidence to the contrary.  Accordingly, all Defendants are entitled to summary judgment on Nasby's Count I, First Amendment claim.

### 4.     Personal Participation

Nasby has further provided no evidence any of the Defendants named in his SAC participated in any constitutional deprivation Nasby allegedly suffered.  Rather, the sole

piece of evidence Nasby has pointed to indicating the involvement of any of those defendants was Defendant Sandie's denial of a grievance. (*See* ECF No. 85 at 142). Merely responding to Nasby's grievance, without more, is insufficient to establish Sandie personally prevented or interfered with Nasby's access to the courts. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (simply reviewing or processing appeals, without more, cannot create liability for prison officials under § 1983) (citing *Mann v. Adams*, 855 F.2d 639, 649 (9th Cir. 1988). Instead, liability in a § 1983 action arises where a defendant personally participates in a deprivation. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The undisputed evidence shows no personal participation by any named defendants in any harm allegedly suffered by Nasby. Accordingly, all Defendants are entitled to summary judgment on Nasby's Count I, First Amendment meaningful access to the courts claim.

### C.     Counts I, II, and III – Incorporation and Due Process

The United States Supreme Court has "grounded the right of access to courts in . . . the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury,* 536 U.S. 403, 415 n. 12 (2002) (internal citations omitted). The standard under the First and Fourteenth Amendment for establishing a meaningful access claim is the same. *Phillips*, 477 F.3d at 1075-76. "Access to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty." *Id.* (quoting *Lewis*, 518 U.S. at 384) (internal citations omitted). "The first element, requiring the loss of a nonfrivolous underlying claim, goes to the plaintiff's standing to bring suit. To have standing to assert a claim of denial of access to the courts, an inmate must show 'actual injury.'" *Id.* (quoting Lewis, 518 U.S. at 351). As discussed above, Nasby has failed to meet the threshold meaningful access inquiry or provide any evidence establishing a cause of action for denial of meaningful access to the courts. Moreover, Nasby's claims are barred by *Heck*. *See* 51 U.S. at 487. Accordingly, all Defendants are entitled to summary judgment on Nasby's Counts I, II, and III, Fourteenth

Amendment due process claims.[4]

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Defendants' motion for summary judgment (ECF No. 95) be granted and Nasby's motion for summary judgment (ECF No. 85) be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 95) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Nasby's motion for summary judgment (ECF No. 85) be **DENIED**; and

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly.

**DATED**: August 27, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Where the court determines a plaintiff's allegations fail to show a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, Nasby is unable to establish a violation of his rights under the United States Constitution. Accordingly, there is no need to further discuss qualified immunity.